IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ALEXANDER CURRY-FISHTORN                                        PLAINTIFF

v.                              Civil No. 1:20-cv-1043

DAVID NORWOOD, Sheriff Ouachita
County; CAMERON OWENS, Captain
Ouachita County Detention Center ("OCDC");
And JIM SMITH, Jailer OCDC                                      DEFENDANTS

## <u>MEMORANDUM OPINION</u>

This is a civil rights action filed *pro* se by Plaintiff, Alexander Curry-Fishtorn under 42

U.S.C. § 1983. On February 8, 2021, the parties consented to have the undersigned conduct all

proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment

in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 16).

Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 21).

Plaintiff filed a Response to the motion on September 10, 2021.[1] (ECF No. 29). Defendants filed

a Reply on September 17, 2021. (ECF No. 30). The Court finds this matter ripe for consideration.

## I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Ouachita County Detention Center ("OCDC") in

Camden, Arkansas. (ECF No. 7, p. 2).

On January 11, 2020, Plaintiff filed a grievance which was assigned to Cameron Owens.

The date of occurrence of the incident is noted as January 10, 2020. The grievance states as

follows:

---

[1] Plaintiff's Response was electronically filed from the office of Thomas F Godfrey, 3 Bristol Drive, Michigan City, Indiana. However, the Court was informed that Mr. Godfrey does not represent Plaintiff. (ECF No. 31). In addition, the Court notes Plaintiff did not physically sign the Response. Instead, it appears his signature was typed in and then submitted electronically. (ECF No. 29).

1

Problem: Officer smith pulled his taser in a pod pointed it at an image told him to move out the way gave no warning to the pod he was entering just to single me out for a towel hanging on the bar then told me I better say yes sir to him I said absolutely nothing to him so he said quote for quote what you need to day is yes sir to me so I got something for you curry put me on blast by name saying he going to do something to me because I did not say yes sir

Request: This is not the first or the second time smith has treated people this way, and most of the time when he does speak to inmates its disrespectful or threatening over something so petty but also he does it mostly in front of female guards like he has something to prove it was uncalled for I did not get sent to hole or wrote up but I did get threatened personally by co smith this is just as bad as woods if not worse by calking me out by name like he did I'm probably going to have my mom notify the us Marshall office also because he never acts or speaks to people like that till first shift leaves

(ECF No. 27-1, p. 63).

On January 20, 2020, James Smith – a supervisor at the OCDC – was passing out medication in the pod to the inmates, including Plaintiff. (ECF No. 21-1, p. 2). Plaintiff refused to comply with Smith's instruction to open his mouth correctly. Even so, Plaintiff was allowed to return to the pod. *Id.*

Plaintiff began cursing and acting disorderly and incitive. (ECF Nos. 21-1, p. 2; 21-2, p. 1). Smith then told Plaintiff to get his mat and a blanket and to come with him. Plaintiff refused to comply. Smith repeated the order several times. Officer MacDonald[2] came into the pod and repeated the same order. (ECF No. 21-4, p. 1). Plaintiff continued to refuse to comply. *Id.*

According to the affidavit of Smith, Plaintiff needed to be removed from the pod before he incited issues with other inmates. (ECF No. 21-1, p. 2).

---

[2] Officer McDonald is not a named Defendant in this lawsuit.

2

Officer McDonald told Plaintiff to turn and get onto the wall, but Plaintiff began to resist McDonald. (ECF No. 21-4, pp. 1-2). Smith then assisted McDonald by helping to place Plaintiff on the wall and placed handcuffs on him. (ECF No. 21-1, p. 2).

According to Smith's report and affidavit, he then escorted Plaintiff to D-Pod and placed him on the wall outside D-7. (ECF No. 21-1, p. 2). Smith told Plaintiff not to move and to place his hands on the wall by his head so the handcuffs could be removed. *Id.* Plaintiff continued to curse. As Smith started to remove the right cuff Plaintiff pushed back towards him. Smith then placed Plaintiff back onto the wall using his left arm and told him not to move again. *Id.*

Plaintiff was then placed in D-7. (ECF No. 21-1, p. 2). Smith states in his affidavit, "I used only the amount of force necessary to gain control over Curry-Fishtorn during his resistance of myself and McDonald. I did not participate in any excessive force with respect to Curry Fishtorn nor did I witness any excessive force used upon him." *Id.*

Smith also states, "I gave Inmate Curry-Fishtorn a moment to calm down and returned to check on him due to him informing the Tower Officer the he was injured and need to go the the hospital. I found he had a little dried blood on his mouth and a scratched nose. I had Officer McDonald give him 2 Tylenol and a anti-bacterial wipe…" (ECF No. 21-4, p. 1).

According to the affidavit of Captain Owens – the Jail Administrator for the OCDC - after Smith informed administration of the event, Plaintiff was checked over by staff. He had a scratch on his nose and a chip in a tooth that did not require medical attention. (ECF No. 21-3, p. 3). Owens also states, "the Guardian Logs… show that the day of the incident, and the days after, Mr. Curry-Fishtorn was subjected to well-being checks and there is no record of any health issue being raised by [him]…" *Id.* at p. 5.

Captain Owens also states he reviewed the incident records from the encounter between Plaintiff, Smith, and McDonald considering the OCDC's Use of Force Policy and determined there was no violation of the policy by any of the officers involved. (ECF No. 21-3, p. 3).

The OCDC's Use of Force Policy states its Detention Officers will use the minimum amount of non-deadly force necessary to maintain the security and control of detainees, and to prevent incident(s) from escalating into an emergency. (ECF No. 21-8). In addition, the policy gives the following examples that may justify the use of non-deadly force: a) when a detainee is assaulting, or appears likely to assault, another detainee or Staff; b) when a detainee is destroying or appears likely to destroy property; and c) when it appears that a detainee is or may be preparing to escape. *Id.* The policy also states, "A detention officer will never use any type of force to punish a detainee or use force solely in response to insulting words that may be directed toward him/her by a detainee." *Id.*

According to the OCDC's Use of Force Policy, in situations where immediate physical harm does not appear to be imminent, detention officers are to initiate the following alternatives prior to using force on any detainee: a) verbally address the detainee and attempt to persuade him/her to stop the behavior; b) verbally advise the detainee as to the consequences that will occur if he/she does not stop the behavior; and c) request assistance. (ECF No. 21-8). Finally, the policy requires detention officers to submit a written report when any type of force is used. *Id.*

On January 21, 2020, Plaintiff submitted the following grievance:

On 01/18/20 during pill call at night after officer mcdonald gave me my meds, officer smith asked me to open my mouth and lift my tongue which I did several times and because of his dislike of me he asked me to stick my fingers in my mouth which I refused to be demeaned in suck a low manner, he yelled at me and allowed me back into the pod (a-pod) when I got to my rack officer smith said 'pack your shit curry, mat and blanket only!' I responded with saying 'why? I did nothing' that

4

is when officer mcdonald and officer smith entered a-pod and assaulted me. Officer mcdonald put his hands around my nck and tried to strangle me in front of everyone when I told him to 'get off of me' he continued his assault and that's when officer smith told me to put my hands behind my back which I did when he handcuffed me officer smith then dragged me out of a-pod in a way that put me immense pain on my wrists , and took me to d-pod (the hold) when he slammed me to the wall waiting for d-pods main door to open. After it opened we entered the hole when officer smith took me outside cell D7 when he slammed my head into the wall with enough force to shatter my left tooth, bust my lip, break my nose, damage the vision in my left eye and threw me into the cell where he left me to bleed all over the floor. I tried to ask the officer in the tower at the time who was officer von, for help. I asked for medical attention and to go to the hospital for my broken face, when officer von told me all he could do is notify the supervisor when was officer smith and officer mcdonald. They left me to bleed on the floor for a long extended period of time until they came and told me my injuries where not serious to go to the hospital and tried to say my tooth was always broken which is a false statement. They only offered a wipe and tyonal and left me to suffer all night. My roommate saw all this occur (kenny trailer)

(ECF No. 27-1, p. 60). In the grievance Plaintiff requested, "for my lawyers and th I want my belonging I was I was the body cam footage and everything recorded with paper transcripts of what happened to me and these event and blatantforced to leave behind in a-pod happene us marshalls notifyeto be returned to the pod I was wrongly removed from. I did nothing to warrant such violence against me and was to speak directly to captain owens." *Id.*

The following day, Plaintiff submitted another grievance stating, "Follow up grievance from last. I was forced to leave all my belongings in A-pod and don't even have a roll of toilet paper. And was wrongly attacked for no good reason." (ECF No. 27-1, p. 59). He goes on to request, "I would like to be returned to A-pod. And for all the body cam and footage to be saved for my lawyer. I did not deserve any of the treatment I was forced to endure nor did I warrant any abuse. Please stop tis cruel punishment and take me out of 23&1 and return me to A-pod where I was forced to leave all my personal items. Please and thank you." *Id.*

Plaintiff also submitted a medical request form on January 22, 2020, stating:

5

> Please I need help I believe my nose is broken and I cant smell anything but the overwhelming scent of blood and I have a very hard time eating sold food and drinking water pains my sensitive broken tooth, along with my left eye has been throbbing and is still feeling glazed and fuzzy. I think I may have a concussion. Please I need to go to a hospital.

(ECF No. 27-2, p. 41). Handwritten notations indicate Plaintiff was seen by Nurse Holmes and was prescribed Tylenol, Tramadol, and Flonase nasal spray on January 24, 2020, by Dr. Deluca. *Id.*

On January 27, 2020, Plaintiff submitted a grievance stating, "I've been in the hole for a week can I please go back to a-pod? I'm sorry". (ECF No. 27-1, p. 58). He goes on to request, "Please send me back to a-pod where all my belongings are. Please and thank you. *Id.*

On January 29, 2020, Plaintiff submitted another grievance stating, "When I was moved out of A-pod I guess all my paper work and papers were moved to my property by Mr. Mac and I was wondering if I could please have all my papers back. That's very important to me please captain Owens. And thank you so much for allowing me to come back to a-pod. I really appreciate it." (ECF No. 27-1, p. 57).

On February 22, 2020, Plaintiff submitted a medical request stating, "I have a huge blood blister on the inside of my upper lip the size of a quarter that's infected and running into a rotting hole in my face, it pains me to eat and I need something to treat it and relieve the pressure and pain please." (ECF No. 27-2, p. 38). Written notations on the request dated "3/4/2020" read "Lidex gel applied to affected area qid-notify nurse if no improvement". *Id.*

On April 3, 2020, Plaintiff submitted a medical request concerning an "in grown toe nail and its open and constantly bleeding…" (ECF No. 27-2, p. 36). Notations written on the request read, "Bactrim Ds BID x 7 days". *Id.* This medication was prescribed by Dr. Deluca. *Id.* at p. 35.

On May 11, 2020, Plaintiff submitted a medical request concerning night sweats, trouble sleeping, and an irregular heartbeat. (ECF No. 27-2, p. 34). In response Dr. Deluca increased Plaintiff's prescription medication on May 15, 2020. *Id.* at p. 33.

On May 25, 2020, Plaintiff submitted a medical request concerning dandruff. (ECF No. 27-1, p. 32). In response Dr. Deluca prescribed Seroquel for Plaintiff. *Id.* at p. 30.

On July 27, 2020, Plaintiff submitted a medical request asking for dandruff shampoo and "some of that nasal spray…" (ECF No. 27-2, p. 22). On August 5, 2020, Dr. Deluca prescribed the shampoo and Flonase spray for Plaintiff. *Id.* at p. 21.

On August 14, 2020, Plaintiff submitted a medical request expressing concern about weight gain and asking to increase the dosage of some of his medication. (ECF No. 27-2, p. 20). In response Dr. Deluca refilled Plaintiff's medication. *Id.* at p. 19.

On August 19, 2020, Plaintiff filed the instant lawsuit. (ECF No. 1).

On September 19, 2020, Plaintiff submitted the following medical request:

Dear ms red could you please try to convince the doctor to up my medications? Id like to be given my 50mg of serquill in the morning and my nightly dose uped to 100mg. ive been here at this jail for 14 months and counting and ive experienced extreme mental and physical pain during this time…and other issues ive been dealing with in relation to my prior service years..Ive been having more extreme troubles with my mental health issues…

(ECF No. 27-2, p. 18).

On November 5, 2020, Plaintiff submitted a medical request stating, "my tooth has been hurting recently and I was told that I should ask for the anti-biotic so I don't have to quarantine, please id appreciate it." (ECF No. 27-2, p. 10). The following day, Dr. Deluca prescribed Clindamycin for seven days. *Id.* at p. 9. It is not clear from the record if this tooth was the same one that was chipped during the January 20, 2020, incident.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint on August 19, 2020, in the Eastern District of Arkansas. (ECF No. 2). That same day the case was transferred to the Western District of Arkansas, El Dorado Division. (ECF No. 4). In response to this Court's order Plaintiff filed an Amended Complaint on September 8, 2020, naming Sheriff David Norwood, Captain Cameron Owens, and Jailor Jim Smith as Defendants. (ECF No. 7). At that time, Plaintiff states he was in jail awaiting trial on pending criminal charges. *Id.* at p. 3. He is seeking compensatory and punitive damages and is suing Defendants in their individual and official capacities. (ECF No. 1, pp. 4-7).

Plaintiff describes Claim One as "Denial of proper dental and medical care, fostering an abusive environment." (ECF No. 7, p. 5). He identifies David Norwood – the Sheriff of Ouachita County – as the Defendant involved and describes his claim as "Failed to train, supervise, and discipline jailors (and) for failing to protect plaintiff from Mr. Smith after he reported that he had been threatened by Mr. Smith prior to the attack." *Id.* Plaintiff does not provide any description of his official capacity claim against Defendant Norwood. *Id.* at p. 4.[3]

Plaintiff describes Claim 2 as "denial of proper dental and mental care and fostering an abusive environment". (ECF No. 7, p. 4). He identifies Cameron Owens as the Defendant involved and describes his claims against him as, "failed to train, supervise, and discipline jailors and for failing to protect plaintiff from Mr. Smith after he report he had been threatened by Mr. Smith prior to the attack." *Id.* Plaintiff does not provide any description of his official capacity claim against Defendant Owens. *Id.* at p. 6.

Plaintiff describes Claim 3 as "excessive force, police brutality". (ECF No. 7, p. 6). He identifies "James/Jim Smith" as the Defendant involved and describes the claims as "excessive

---

[3] The pages in Plaintiff's Amended Complaint were filed out of order.

use of violence reslouting in mental damage, broken teeth, broken nose, damaged eye, denial of dental and medical care, and cruel and unusual punishment." *Id.* at p. 6. Again, Plaintiff does not provide any description of his official capacity claim against Defendant Smith.

Attached to Plaintiff's form Amended Complaint are four handwritten pages setting forth what Plaintiff refers to as "Facts in support of claims". (ECF No. 7, pp. 8-11). The Court notes the form complaint gives Plaintiff the following instructions, "If you need more space for additional Defendants, list the additional Defendants on another piece of paper, using the same outline." *Id.* at p. 3. Plaintiff did not add any additional Defendants but does expand on the facts to support his claims and asserts various additional state law claims described as, "state torts of aggravated assault and battery, police brutality, and denial of reasonable medical and dental care in violation of Arkansas regulations governing detention facilities, Arkansas Code § 12-26."

Plaintiff also states in part:

Around the first week of January, 2020 Jailor Jim Smith threatened me saying 'on the kiosk, that Mr. Smith had threatened me. Nothing was done.

About a week later, around January 14th, 2020 Mr. Smith and fellow jailor, Mr McDonald were running the 'pill cart'. Mr. Smith stopped me after I took my pills and scolded me on how I should behave if I go to prison and it infurated him that I was not enthusiastic about the talks. He then examined my mouth to see that I took my pills. I opened my mouth once and then again with my tongue lifted. Finding nothing, he the commanded me to stick my fingers in my mouth and move them around, I told him "No, I won't be humiliated." He then lectured me more and let me go back to the pod (living space). When I got to my bed he said 'you know what, pack your shit Curry!' I turned and asked, 'Why what did I do?' that's when Mr. Smith drew his taser and Mr. McDonald put my arms behind my back and cuffed me. Mr. Smith then, alone, took me to a lockdown cell in D-pod. After we left A-pod and were alone in the hallway Mr. Smith slammed me into a wall, he then led me into D-pod and led me under the stairs into the corner in front of Cell D-7 where inmate henry Traylor was. Mr. Smith pressed me against the wall and yelled 'I said stay on the wall' and slammed my face into the concrete, shattering my front upper left tooth, breaking my nose, and causing pain to my left eye which became fuzzy and glazed. He then threw me into D-7 with henry white I was

bleeding profusely from my mouth and nose. I hit the call button, I was scared and pleading for help. I told the tower guard (Mr. Vaughn) that I need to go to the hospital and I asked for the supervisor on duty (who I did not know was Mr. Smith). Henry also hit the button trying to get help for me. Eventually Mr. Smith came, shined a light in my face and said that my injuries did not call for a hospital. He gave me an alcohol wipe and Mr. McDonald gave me ibprofin. The next day, the nurse, Stephanie Holmes, took pictures of my face. She said that she could not help me and left. After days of requesting medical attention, the nurse claimed that she had put in for me to see the doctor and told me that it would be weeks before I would be seen. I still have seen a doctor. Captain Owens has told me that they would pull my teeth but not provide any other dental or medical care.

(ECF No. 7, pp. 9-11). Plaintiff provides the following verification of the extra four pages stating "I declare under penalty of perjury (18 U.S.C. 1621) that the foregoing is true and correct. Executed on this 2nd day of September, 2020." *Id.* at p. 11.

On July 28, 2021, Defendants filed a Motion for Summary Judgment, Statement of Undisputed Facts, and a Brief in Support. (ECF Nos. 21, 22, 23). They argue: 1) Defendant Smith's actions were objectively reasonable entitling him to summary judgment on the merits of Plaintiff's excessive force claim and he is entitled to qualified immunity; 2) Plaintiff's claims for mental injury fail as a matter of law; 3) Plaintiff fails to support his claim of injury for his excessive force claim because there is no evidence of more than *de minimus* injury; 3) Plaintiff has not proved he had a serious medical need nor has he proved Defendants Norwood and Owens were deliberately indifferent to his medical needs; 4) Plaintiff has not placed any verifying medical evidence into the record and therefore cannot show any injury-in-fact resulted from any action or inaction of Defendants Norwood or Owens; 5) Plaintiff has not alleged any facts to show Defendants Norwood and Owens were personally involved in, or directly responsible for any deprivation of his constitutional rights; and 6) Plaintiff has not alleged or described any policy or custom of Ouachita County which contributed to a violation of his constitutional rights and therefore his

10

official capacity claims fail. (ECF No. 23).

Defendants acknowledge that Plaintiff also "mentions" claims against Defendants Norwood and Owens for "failure to train, supervise and discipline and Plaintiff claims a failure to protect from Smith, saying he 'reported he had been threatened by Mr. Smith prior to the attack'" in his Amended Complaint." (ECF No. 23, p. 8). Defendants argue Plaintiff has not stated facts to support these claims and therefore they are entitled to summary judgment. (ECF No. 23, p. 8). Defendants do not mention Plaintiff's state law claims in their summary judgment motion or brief.

On January 15, 2020, Plaintiff filed a Response to the motion. (ECF No. 29). However, this Response is not verified by Plaintiff or physically signed by Plaintiff. Moreover, the Response also includes numerous references to inadmissible hearsay evidence.[4]

On September 17, 2021, Defendants filed a Reply in Support of their summary judgment motion. (ECF No. 30). They argue in part: 1) Plaintiff failed to respond to their Statement of Disputed Facts and those facts must be admitted as a matter of law; 2) much of what Plaintiff says in his Response is hearsay; 3) Plaintiff's response is not verified; 4) Plaintiff's story is not consistent with the video evidence; and 4) Plaintiff makes conclusory allegations about training and the policies, but nothing factual is put into the record. *Id.*

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[4] Federal Rule of Civil Procedure 56 requires the nonmoving party to cite admissible evidence to survive summary judgment. *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) ("When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment.").

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).

"A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing*, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

### A.  Defendants Norwood and Owens

In Claims One and Two, Plaintiff alleges Defendants Norwood and Owens denied him proper dental and medical care and fostered an abusive environment in the OCDC. He also alleges these Defendants "failed to train, supervise, and discipline jailors and for failing to protect plaintiff from Mr. Smith" after he reported he had been threatened by Mr. Smith. (ECF No. 7, pp. 4-5). The Court will address each of these claims separately.

### 1.  Denial of Dental and Medical Care

 The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817

(8th Cir. 2012). This prohibition applies equally to pretrial detainees. *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006). To prevail on his claim of denial of medical care, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

For purposes of this order, the Court will assume Plaintiff's injuries he claims were sustained during the incident with Defendant Smith – a broken tooth, "busted" lip, scratched nose,

and an eye injury – constitute serious medical needs which even a lay person could recognize as requiring some type of treatment.[5]   Here, Plaintiff's claims against Defendants Norwood and Owens for denying him dental and medical care fail as a matter of law.

First, Plaintiff has not provided any summary judgment evidence to demonstrate either of these Defendants had any direct involvement in Plaintiff's dental or medical care after the January 20, 2020, incident with Defendant Smith.[6] At the time of the events in question, Defendant Norwood was the Sheriff of Ouachita County and Defendant Owens was the Jail Administrator for the OCDC. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

The summary judgment record reflects it was Defendant Smith and Officer McDonald who initially provided Plaintiff with Tylenol and an antibacterial wipe after the incident occurred. Then, after Plaintiff submitted a medical request on January 22, 2020, the record reflects he was seen by Nurse Holmes and prescribed various medications by Dr. Deluca which included Tylenol, Tramadol, and nasal spray.

---

[5] Although Plaintiff claims his nose was broken, there is no medical evidence to support this allegation.

[6] Plaintiff's does allege that Defendant Owens "has told me that they would pull my theeth but not provide any other dental or medical care." (ECF No. 7, p. 11). This allegation is contradicted by Plaintiff's own grievances and medical requests.

14

Even if the Court assumes there is some evidence of direct involvement by Defendant Norwood or Owens with Plaintiff's medical care, there are no facts that either of these Defendants were deliberately indifferent to Plaintiff's needs. After Plaintiff's January 22, 2020, medical request Plaintiff did not submit any additional requests for dental or medical care related to the alleged injuries he suffered on January 20, 2020. The summary judgment record reveals Plaintiff submitted grievances in late January 2020 asking to be moved back to A-Pod and to "please have all my papers back". Between February 22 and August 18, 2020 – the day he filed the instant lawsuit - Plaintiff submitted medical requests regarding a blood blister inside of his upper lip, an in grown toenail, nights sweats, an irregular heartbeat, anxiety, nasal spray, weight gain related to his medications, and adjustments in his medications. Plaintiff's medical file confirms his requests were addressed within one to days and his medications were prescribed and refilled as needed on a regular basis.

It is clear from Plaintiff's pleadings he disagrees with the medical care provided to him at the OCDC after the incident with Defendant Smith. However, the law is clear Plaintiff's disagreement with the course of treatment for his injuries fails to state a claim for deliberate indifference. *See Meuir v. Green Cnty Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (an inmate has no constitutional right to a particular course of treatment, and mere disagreement with the medical treatment he receives is not a basis for Section 1983 liability); *Lair v. Ogelsby*, 859 F.2d 605, 606 (8th Cir. 1988) (mere disagreement about which medication should have been prescribed does not constitute an Eighth Amendment violation).

Although Plaintiff has a constitutional right to adequate health care, he does not have the right to health care of his choice (i.e., evaluation by a doctor at a hospital). Courts "hesitate to find an [E]ighth [A]mendment violation when a prison inmate has received medical care." *Smith v.*

*Jenkins*, 919 F.2d 90, 93 (8ᵗʰ Cir. 1990). Accordingly, the Court finds Defendants Norwood and Owens are entitled to summary judgment on Plaintiff's claim they denied him adequate dental and medical care.

### 2. Failure to Train, Supervise, Discipline,

Plaintiff also alleges Defendants Norwood and Owens failed to train, supervise, and discipline jailors. Defendants argue Plaintiff has failed to state facts to support this claim. The Court agrees.

In determining whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal,* 566 U.S. 662 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 679. A plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.*

"When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending action, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Marsh v. Phelps County,* 902 F.3d 745, (8ᵗʰ Cir. 2018) quoting *S.M. v. Krigbaum,* 808 F.3d 335, 340 (8ᵗʰ Cir. 2015). Here, the summary judgment record is clear that neither Defendant Norwood nor Owens had any direct involvement in the alleged excessive force used against Plaintiff by Defendant Smith.

16

Plaintiff did submit a grievance on January 11, 2020, concerning verbal threats made against him by Defendant Smith. Plaintiff also stated Defendant Smith treated he and other inmates with disrespect on numerous occasions. The summary judgment record indicates this grievance was assigned to Defendant Owens. However, the law is clear, "verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail official did not rise to the level of a constitutional violation).

Here, not only has Plaintiff failed to state any facts to support his legal conclusions that Defendants Norwood and Owens failed to train, supervise, or discipline jailors, but Defendants did not receive any notice of a pattern of *unconstitutional* violations by Defendant Smith. Therefore, they are entitled to qualified immunity. Accordingly, the Court finds Defendants Norwood and Owens are entitled to summary judgment on these claims.

### 3. Failure to Protect

Plaintiff alleges Defendants Norwood and Owens failed to protect him after he reported he had been threatened by Defendant Smith. This claim fails as a matter of law.

Prison officials must provide humane conditions of confinement, including protecting inmates from violence. *See Jensen v. Clarke,* 94 F.3d 1191, 1197 (8th Cir. 1996). Although prison officials may not be held liable under § 1983 for the constitutional violations of a subordinate on a *respondeat superior* theory, they can be liable for failing to protect an inmate from a substantial risk of serious harm to the inmate. *Lenz v. Wade,* 490 F.3d 991 (8th Cir. 2007) citing *Blades v.*

17

*Schuetzle,* 302 F.3d 801, 803 (8th Cir. 2002). First, the conditions that result from the failure to protect the inmate must pose a substantial risk of serious harm to the inmate. *Farmer v. Brennan,* 511 U.S. 825, 834 (1970). Second, the prison officials must have exhibited a sufficiently culpable state of mind, that is, the official must have been deliberately indifferent to a substantial risk of serious harm to the inmate. *Id.* at p. 834. The prison "official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837.

An obvious risk of a harm justifies an inference a prison official subjectively disregarded a substantial risk of serious harm to an inmate. *See Hope v. Pelzer,* 536 U.S. 730, 738 (2002). However, "[a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability". *Howard v. Adkison,* 887 F.2d 134, 138 (8th Cir. 1989). "However, as the number of incident grow[s], and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes plausible." *Id.*

Here, Plaintiff filed a single grievance complaining that Defendant Smith verbally threatened him and treated him with disrespect. This grievance does not provide a basis for Defendants Norwood or Owens to have inferred any substantial risk of harm to Plaintiff from Defendant Smith. Accordingly, Defendants Norwood and Owens are entitled to summary judgment regarding Plaintiff's claims based on failure to protect.

### B.  Claim 3 - Excessive Force Against Defendant Smith

Plaintiff alleges Defendant Smith used excessive force against him on January 20, 2020, when he slammed his head into the concrete wall while he was handcuffed resulting in a busted lip, a broken tooth, a broken nose, and injuries to his left eye which caused his vision to be temporarily impaired. Defendant Smith argues the force he used was reasonable because Plaintiff

18

refused to obey his orders and "pushed back against him". (ECF No. 21-1, p. 2). Defendant Smith also argues Plaintiff's alleged injuries were *de minimus*.

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[O]rdinary errors of judgment" do not rise to the level of an Eighth Amendment violation. *Id.* at 322. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

The Court has reviewed the video footage submitted by Defendants and is unable to determine what exactly occurred between Plaintiff and Defendant Smith on January 20, 2020. Although there is no evidence to support Plaintiff's claims that his nose was broken, there is no dispute that Plaintiff was handcuffed when the use of force was applied by Defendant Smith. Plaintiff claims he did not resist, and Defendant Smith says Plaintiff pushed back against him while he was attempting to remove the handcuffs. Moreover, the summary judgment record confirms Plaintiff sustained injuries to his lip, nose, and eye.  In addition, his tooth was broken during the incident. The Court finds there are questions of material fact as to whether the force used by Defendant Smith was reasonable under the circumstances and whether Plaintiff's injuries are sufficient to support such a claim. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim of excessive force against Defendant Smith is denied.[7]

---

[7]Because the Court finds there are questions of material fact as to whether Defendant Smith's use of force was reasonable, the Court will not address the issue of whether he is entitled to qualified immunity.

### C.  Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants Smith, Owens and Norwood are treated as claims against Ouachita County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [o county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Ouachita County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Plaintiff has not alleged or described any policy, practice, or custom of Ouachita County, Arkansas that contributed to a violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's official capacity claims against Defendants fail as a matter of law and Defendants are entitled to summary judgment. *Id.*

### D.  State Law Claims

On page 9 of his Amended Complaint Plaintiff indicates he is asserting various state law claims in addition to his 1983 claims for excessive force and denial of medical care. He describes

these claims as "state torts of aggravated assault and battery, police brutality and denial of reasonable medical and dent care in violation of Arkansas regulations governing detention facilities, Arkansas Code § 12-26." (ECF No. 7, p. 9). Because these state law claims do not arise under the United States Constitution or a federal statute, § 1983 provides no remedy. *See Collier v. City of Springdale*, 733 F.2d. 1311, 1313 (8th Cir. 1984) (deprivation of a right secured by the constitution or laws of the United States is an essential element of § 1983 action).

The Court's subject matter jurisdiction in this action is premised on the existence of a federal claims – namely, the alleged deliberate indifference to Plaintiff's medical needs and the use of excessive force. Jurisdiction over Plaintiff's state law tort claims for assault, battery, "police brutality and denial of reasonable medical and dental care in violation of Arkansas regulations governing detention facilities, Arkansas Code § 12-26" exists solely by virtue of the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides jurisdiction over state law claims forming part of the same "case or controversy" as federal claims.

The exercise of supplemental jurisdiction is discretionary, and where all federal claims have been dismissed prior to trial, the factors to be considered in deciding whether to exercise such jurisdiction – judicial economy, convenience, fairness, comity, and predominance of state issues – typically go against doing so. *Johnson v. City of Shorewood, Minn.,* 360 F.3d 810, 819 (8th Cir. 2004) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). *Accord, e.g., United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Because the Court is dismissing all of Plaintiff's federal claims except the claim of excessive force against Defendant Smith, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims for "denial of reasonable medical and dental care in violation of Arkansas regulations governing detention facilities, Arkansas Code § 12-26". However, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims for aggravated assault, battery, and police brutality against Defendant Smith because these claims arise out of a common nucleus of operative facts with Plaintiff's federal claim of excessive force.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 21) is **GRANTED IN PART and DENIED IN PART** as follows:

1. Defendants' Motion for Summary Judgment is **GRANTED** on all of Plaintiff's individual capacity claims against Defendants Norwood and Owens. These claims are **DISMISSED WITH PREJUDICE;**

2. Defendants' Motion for Summary Judgment is **GRANTED** on all of Plaintiff's official capacity claims against all Defendants. These claims are **DISMISSED WITH PREJUDICE;**

3. Defendants' Motion for Summary Judgment on Plaintiff's individual capacity claim against Defendant Smith for excessive force is **DENIED**. Accordingly, this claim and his related state law claims – aggravated assault, battery, and police brutality - shall remain for resolution at trial; and

4. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims for "denial of reasonable medical and dental care in violation of Arkansas

regulations governing detention facilities, Arkansas Code § 12-26". These claims are

**DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED,** this 5th day of January 2022.

_/s/ Barry A. Bryant_
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE